## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BAY JOURNAL MEDIA, INC.,
619 Oakwood Drive
Seven Valleys, PA 17360-9395,

*Plaintiff*,                                            Case No.

vs.

UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY,
1200 Pennsylvania Avenue
Washington, DC 20004,

*Defendant*.

## COMPLAINT FOR INJUNCTIVE RELIEF

Plaintiff Bay Journal Media, Inc., brings this action under the Freedom of Information Act, 5 U.S.C. § 552 ("FOIA"), against Defendant, United States Environmental Protection Agency ("EPA" or "agency"), to compel Defendant to produce documents regarding the abrupt termination of an EPA grant to the *Bay Journal,* an award-winning regional newspaper that covers environmental issues affecting the Chesapeake Bay and has received funding from the agency for more than two decades.

### Jurisdiction and Venue

1.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

2.      Venue is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

3.      Because Defendant has failed to comply with the applicable time limit provisions in FOIA, Plaintiff is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and 40 C.F.R. § 2.104(a).

## Parties

4.      Plaintiff Bay Journal Media, Inc., is a not-for-profit organization based in Seven Valleys, Pennsylvania, that produces and distributes the *Bay Journal* newspaper.  The paper's mission is to produce independent, unbiased reporting that informs the public about environmental issues affecting the Chesapeake Bay and to inspire effective action by individuals, groups, organizations, and all levels of government to restore, protect, and preserve the cultural and natural heritage of the Chesapeake Bay region.  The *Bay Journal* has an editorial staff who have a combined 125 years of experience reporting on the Bay and cover issues such as climate change, conservation, pollution, energy sources, and politics and policy pertaining to the Bay.

5.      Defendant EPA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f)(1), that is headquartered in Washington, D.C.  The EPA has possession, custody, and control of records to which Plaintiff seeks access.

## Factual Allegations

### Chesapeake Bay Program

6.      Efforts to restore and preserve the Chesapeake Bay have been ongoing for more than three decades.

7.      The Chesapeake Bay Commission was created in 1980 as a bi-state commission to help Maryland and Virginia collaborate and cooperate on the management of the Chesapeake Bay.  Pennsylvania was added to the Commission in 1985.

2

8.      In 1983, the governors of Maryland, Virginia, and Pennsylvania, joined by the

Mayor of the District of Columbia, the chairman of the Chesapeake Bay Commission, and the

Administrator of EPA signed the first Chesapeake Bay Agreement, a coordinated federal-state

effort to reduce pollution and restore the Bay that has been renewed on a periodic basis and

remains in effect today.  *See* Chesapeake Exec. Council, CHESAPEAKE BAY WATERSHED

AGREEMENT (2014).

9.      In 1987, Congress amended section 117 of the Clean Water Act ("Act") to

"ratif[y] the Chesapeake Bay Program, [as] a voluntary partnership among several watershed

states and EPA" that "supported cleanup efforts [of the Bay] by a program of grants and study."

*Am. Farm Bureau Fed'n v. U.S. Envt'l Protection Agency*, 792 F.3d 281, 308 (3d Cir. 2015)

(citing 33 U.S.C. § 1267); *see also* Water Quality Act of 1987, Pub. L. No. 100–4, § 117, 101

Stat. 10 (1987).

10.      Pursuant to section 117, EPA must maintain a Chesapeake Bay Program Office

that is charged, among other things, with "developing and making available, through

publications, technical assistance, and other appropriate means, information pertaining to the

environmental quality and living resources of the Chesapeake Bay ecosystem" and

"implementing outreach programs for public information, education, and participation to foster

stewardship of the resources of the Chesapeake Bay."  33 U.S.C. § 1267(b)(2).

11.      As is relevant here, section 117(d) further provides for "technical assistance[] and

assistance grants" that are to be administered by the Administrator of the EPA "in cooperation

with the Chesapeake Executive Council," which is composed of the signatories of the

Chesapeake Bay Agreement.  *See* 33 U.S.C. § 1267(d).

12.     Grants for the Chesapeake Bay Program are awarded by EPA following a competitive process that is governed by detailed federal regulations and guidance issued by the Chesapeake Bay Program Office, and that involves review by both EPA officials and external partners in the Chesapeake Bay Program.  *See* 2 C.F.R. Part 200; 2 C.F.R. Part 1500; U.S. EPA & Chesapeake Bay Program Office, U.S. ENVIRONMENTAL PROTECTION AGENCY CHESAPEAKE BAY PROGRAM OFFICE 2017 GRANT AND COOPERATIVE AGREEMENT GUIDANCE (2016).

<u>Defendant's Grant to Bay Journal Media, Inc. and the Termination of the Grant</u>

13.     The *Bay Journal* is an award-winning regional newspaper founded in 1991 with nearly 100,000 print and online readers.  Since its inception, the *Bay Journal* has received grant funding from EPA as part of the Chesapeake Bay Program. In January 2016, following a competitive application process, Plaintiff[1] was awarded a $1.95 million, six-year grant by EPA pursuant to section 117(d) of the Act to publish and distribute the *Bay Journal* to raise awareness regarding the Bay and its health.

14.     EPA made two distributions of the grant award—$350,000 in February 2016 and $350,000 in February 2017—to Plaintiff.

15.     Plaintiff since has received two exemplary evaluations from EPA, in November 2016 and April 2017, that each commended Plaintiff's "[c]ontinued outstanding work in producing independent editorial and news content" as well as "[e]xcellent production in meeting the grant requirements and establishing the standard for coverage of Chesapeake Bay related issues."

---

[1] The grant was initially awarded to Chesapeake Media Service Inc., which has since changed its name to Bay Journal Media, Inc.

16.     In July 2017, an employee from EPA emailed Karl Blankenship, the *Bay Journal*'s editor, to "confirm" that the *Bay Journal* would be receiving an additional $325,000 in grant funding in February 2018, and then successive payments of $325,000 in February 2019, $300,000 in 2020, and $300,000 in 2021.

17.     Yet, on August 23, 2017, Mr. Blankenship received another email from Defendant, advising that the agency was terminating the grant "[d]ue to a shift in priorities."

18.     On September 20, 2017, EPA provided Plaintiff with an Agency Decision reiterating that the grant was being terminated "because of a change in Agency priorities."  The Agency Decision did not provide further elaboration on this supposed "change" but made clear that the decision was not a termination based on any failure by Bay Journal Media, Inc., to comply with the terms of the grant.

19.     In a departure from past practice, in 2017, EPA charged a political appointee, John Konkus, in the Office of Public Affairs with the task of reviewing the agency's grants, including the Bay Journal grant.

20.     Plaintiff is unaware of any change in priorities involving the Chesapeake Bay Program, and EPA has not identified any to Plaintiff.

21.     As explained above, Congress created the Chesapeake Bay Program as a unique partnership between EPA and the watershed states and required that section 117(d) grants be awarded by the EPA Administrator "in cooperation with the Chesapeake Executive Council," which is composed of the signatories of the Chesapeake Bay Agreement.  33 U.S.C. § 1267(d).

22.     Multiple partners in the Bay Program have written to EPA Administrator Scott Pruitt to request the restoration of the *Bay Journal*'s grant funding.

23.     The Chesapeake Bay Commission, which is a member of the Chesapeake Bay Executive Council, wrote to Administrator Pruitt that it was "unware of any change in priorities" and that "there was no consideration of this decision by the Bay Program Partnership."  The Commission's letter, which was signed by state legislators from Maryland, Virginia, and Pennsylvania (watershed states that each are members of the Chesapeake Bay Executive Council), described the *Bay Journal* as "the gold-standard for objective, science-based information about the Bay for all of us, leaders and stakeholders alike" and an "independent source of information [that] has provided objectivity and called for accountability at all levels." The Commission requested that EPA reverse the "unilateral decision" to terminate the grant.

24.     Senators Benjamin L. Cardin and Chris Van Hollen of Maryland have also urged Administrator Pruitt to reconsider the termination, writing that the "mission of Bay Journal Media is directly in line with the priorities of the Congress and other elected officials throughout the Chesapeake Bay watershed" and that there is "no legitimate cause to deprive residents of the Chesapeake Bay watershed of such a vital source of information."

25.     Plaintiff intends to appeal the grant termination through the agency's administrative process.

26.     As described below, Plaintiff submitted a tailored FOIA request to better understand the agency's true reasons for the grant termination and to assist in the preparation of the administrative appeal, which is due to be filed with the agency by November 20, 2017.

<u>Plaintiff's FOIA Request to the EPA</u>

27.     On September 22, 2017, Plaintiff submitted a FOIA request to EPA seeking access to all records within EPA and between EPA and federal or state agencies or other outside parties since January 20, 2017 concerning each of the following:

6

     (1) The "Bay Journal" or "Chesapeake Bay Journal;"

     (2) EPA Grant CB-96342701 awarded to Chesapeake Media Services Inc. (now Bay Journal Media) on 1/20/2016.

     (3) Documentation of any "shift in priorities" for the Chesapeake Bay Program affecting its activities, especially as they relate to grant programs.

A copy of the September 22, 2017 request is attached hereto as Exhibit A and incorporated herein ("September 22 FOIA Request").

28.    Plaintiff's September 22 FOIA Request further specified that the agency should search for responsive records in "email accounts affiliated with the following individuals: Scott Pruitt, Ken Wagner, John Konkus, Cecil Rodrigues, John Armstead, and Diana Esher." September 22 FOIA Request at 1.

29.    Plaintiff also sought a waiver of fees accumulated during the search and review process as a "representative of the news media." *Id.*

30.    EPA confirmed receipt of Plaintiff's September 22 FOIA Request on September 22, 2017, and assigned it a tracking number of EPA-HQ-2017-011741.

31.    On October 31, 2017, EPA notified Plaintiff by email that a fee waiver disposition had been reached and that the fee waiver request "has been determined to be not applicable."

32.    Also on October 31, 2017, EPA provided Plaintiff with a letter, stating that because the "request does not reach the minimum billable amount, therefore, no charges are associated in processing your request." The letter further stated: "The Office of the Administrator will be responding to your information request."

33.    On October 31, 2017, counsel for Plaintiff contacted EPA's Office of General Counsel to inquire about the agency's response to the September 22 FOIA Request. Counsel for

Plaintiff was told that the request had been routed to EPA's Office of Public Affairs for processing and that they should contact an individual in that office for further information regarding the request.  Counsel for Plaintiff left a voicemail for the specified individual on October 31, 2017.  Plaintiff sent an email on November 1, 2017, to the same individual to set a time for a call to discuss the request.  After counsel followed up by email, the EPA representative suggested—and then withdrew—November 6 and November 8 as dates for calls to discuss the request.  On November 7, 2017, after counsel advised the EPA representative by email of Plaintiff's need for the documents due to the upcoming November 20 deadline in the grant termination administrative appeal, the EPA representative wrote to say that the agency was "drafting correspondence regarding next steps" and offered to "set up a time to discuss" following receipt of that correspondence.  As of this filing, no correspondence has been received from the agency.

34.     Notwithstanding the statutory obligation to make a determination of Plaintiff's request within 20 working days, EPA has made no determination on Plaintiff's request, nor has the agency produced any materials in response to that request.

35.     Through EPA's failure to respond within the statutory time limit, Plaintiff has constructively exhausted its administrative remedies and seeks immediate judicial review.

36.     EPA's expeditious response is necessary to permit Plaintiff to discover—and present—evidence relevant to the administrative appeal.

## Claim for Relief

37.     By failing to respond to Plaintiff's request within the statutorily prescribed time limit, Defendant has violated its duties under 5 U.S.C. § 552, including, but not limited to, the

duties to conduct a reasonable search for responsive records, to take reasonable steps to release all non-exempt information, and to not withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1. Order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA request using search methods reasonably likely to lead to discovery of all responsive records;

2. Order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3. Enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

4. Award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

5. Grant any other relief this Court deems appropriate.

Dated: November 13, 2017                    Respectfully submitted,

/s/  Joel M. Gross

Joel M. Gross
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-5705
Joel.Gross@apks.com

Erika D. Norman *pro hac vice forthcoming*
Arnold & Porter Kaye Scholer LLP
601 Massachusetts Ave., NW
Washington, DC 20001
(202) 942-6543
Erika.Norman@apks.com

DEMOCRACY FORWARD FOUNDATION
Josephine Morse* *pro hac vice forthcoming*
P.O. Box 34553
Washington, D.C. 20043
(202) 448-9090
jmorse@democracyforward.org

*Admitted in New York; practicing under the
supervision of members of the D.C. Bar while
D.C. Bar application is pending.